**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO**

In re: VALENCIA FLOUR MILL, LTD.,            No. 11-05-20103 MA

and

JOSE CORDOVA and
KATHRYN CORDOVA

consolidated into

VALENCIA FLOUR MILL, LTD.

Debtors.

## ORDER ON CONFIRMATION OF VALENCIA FLOUR MILL, LTD.'S PLAN OF REORGANIZATION

THIS MATTER is before the Court on confirmation of Valencia Flour Mill, Ltd.'s Plan of Reorganization ("Plan"). Creditor Beal Service Corporation a/k/a LPP Mortgage Limited ("Beal") was the only party to object to the Plan. The Court held a final hearing on the Plan on July 18, 2006 and took the matter under advisement. On the day of the confirmation hearing, Valencia Flour Mill, Ltd., Jose Cordova and Kathryn Cordova (together, "Debtors")[1] filed an Amended Ballot Summary, and on July 20, 2006, Debtors filed a modification to their Plan. *See* Debtor's Modification of Chapter 11 Plan and Notice of Deadline to Object Thereto ("Modification") (Docket # 87). The Modification purports to change the classification of the claim of Citicorp Credit Services (Sears) from a separately classified secured claim in Class 5, to

---

[1] Jose Cordova and Kathryn Cordova filed an individual Chapter 11 proceeding as Case No. 11-05-21676 MA. Case No. 11-05-21676 MA was substantively consolidated with Valencia Flour Mill, Ltd., Case No. 11-05-20103 MA on January 5, 2006. (*See* Order Substantively Consolidating the Chapter 11 Cases of Valencia Flour Mill, Ltd. and Jose and Kathryn Cordova, Docket # 37).

1

an unsecured claim of less than $10,000.00 in Class 6. Upon consideration of the Plan and the evidence presented at the final hearing on confirmation, and in light of the post-hearing Modification filed by the Debtors, the Court finds that the Plan cannot be confirmed as proposed.

FACTS AND BACKGROUND

Debtors operate a flour mill in Valencia County, New Mexico. The mill was originally built in the 1930s. In 1990, Valencia Flour Mill, Ltd. obtained a loan from the U.S. Small Business Administration ("SBA") in the amount of $120,000.00. (*See* Exhibit A). The loan was secured in part by a mortgage on the real property where the mill is situated and other parcels of real property, one of which adjoins the mill property, and others which are nearby but not adjoining. (*See* Exhibit B). Together, the parcels total approximately 1.6 acres. The loan was also secured in part by the fixtures and equipment used at the mill. (*See* Exhibit E). Jose Cordova and Kathryn Cordova executed a personal guaranty of the loan. (*See* Exhibit G). Beal acquired the note, mortgage, and security documents from the SBA in 2001 and is the current holder of the note, mortgage, and security documents. (*See* Exhibit C).

Valencia Flour Mill, Ltd. filed its voluntary petition under Chapter 11 of the Bankruptcy Code on October 12, 2005. Debtors valued the equipment used in the operation of the mill on Schedule B at $20,000.00. To resolve a contested Motion for Permission to Use Cash Collateral, Jose Cordova and Kathryn Cordova granted Beal a first lien on a 2004 Honda Accord Automobile. (*See* Docket # 34 "Cash Collateral Order"). Debtors' Plan proposes to treat the claim of Beal as a fully secured claim to be paid follows: $750.00 per month for twelve months, commencing on the effective date of the plan; $900.00 per month for the second twelve months; $1000.00 per month thereafter for sixty monthly or until a total of $70,000.00 principal, plus 5%

interest has been paid in full. The Plan also provides that Beal shall retain its security interest in the real property, inventory, accounts receivable, furniture, fixtures and equipment, and after acquired equipment used in the flour mill, including replacement inventory. In addition, the Plan provides that Beal shall retain its lien on the 2000 Honda Accord as provided in the Cash Collateral Order.

Beal objected to confirmation of the Debtors' Plan, asserting, *inter alia*[2], that the value of the real property and equipment securing its claim is $110,000.00, so that the Debtors' proposed payment of its claim in the amount of $70,000.00 is inadequate. (*See* Beal Service Corporation's Objection to Disclosure Statement and Confirmation of Debtor's Plan, Docket # Beal also contends that interest should be paid on its claim at the rate of 6.5%, rather than the 5% proposed by the Plan. Beal also objects to the provision in the Plan that relieves Jose Cordova and Kathryn Cordova of any personal liability to Beal upon confirmation. *See* Plan, ¶ 8.2. Beal voted to reject the Debtors' Plan. At the final hearing, the Debtors and Beal stipulated for confirmation purposes that the current total indebtedness to Beal is $216,021.90.

## DISCUSSION

Confirmation of a Chapter 11 plan of reorganization requires a debtor to satisfy all of the elements contained in 11 U.S.C. § 1129. 11 U.S.C. § 1129(a) ("The court shall confirm a plan only if all of the following requirements are met . . ."). Among the confirmation requirements

---

[2] Beal's other objections to confirmation are that the Plan may not be feasible in light of past operating reports, that the default provisions contained in Section 12.1(a) of the Plan lack set limits, that Debtors have inadequately explained their projected 68% monthly increase in average monthly sales, and that Section 5.2 inadequately explains the Debtors' projected salaries. Because the Court finds that the Debtors' plan is otherwise unconfirmable, the Court need not address Beal's remaining objections.

is 11 U.S.C. § 1129(a)(10), which provides:

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by an insider.
>
> 11 U.S.C. § 1129(a)(10).

The Plan includes impaired classes of claims. The Tally of Ballots tendered at the confirmation hearing reflects that Citicorp Credit Services, Inc. (Sears), representing Class 5, voted to accept the Plan.[3] Class 5 is unimpaired.[4] The day after the final hearing on confirmation, Debtors filed a modification to its Plan changing the classification of the claim of Citicorp Credit Services, Inc. (Sears) from a separately classified secured claim in Class 5, to an unsecured claim of less than $10,000.00 in Class 6. The Plan proposes to pay general unsecured claims in Class 6 in full within twelve months of the effective date of the Plan. *See* Plan, ¶ 3.6. Class 6 is impaired. However, Citicorp Credit Services, Inc. (Sears) voted to accept Debtors' Plan based on its proposed treatment as a Class 5 creditor. Thus, the Court cannot find that the Debtors have met the requirement for an accepting impaired class of claims under 11 U.S.C. §

---

[3]The Tally of Ballots (and the Amended Ballot Summary) reflect that Valencia County Treasurer voted to accept the Debtors' Plan. The Plan, Tally of Ballots and Amended Ballot Summary identify Valencia County Treasurer as a Class 1 claimant, and report that Class 1 is an impaired class. However, because the claim of the Valencia County Treasurer is a priority tax claim under 11 U.S.C. § 507(a)(8), its claim must be paid in accordance with 11 U.S.C. § 1129(a)(9)(C) and does not constitute an impaired class.

[4]Although the Plan recites that Class 5 is impaired, the Tally of Ballots recites that Class 5 is an unimpaired class. (*See* Plan, ¶ 2.5). The Amended Ballot Summary filed after the conclusion of the confirmation hearing, recites that Class 5 is impaired. However, the Plan provides that the allowed claim of Sears (Citicorp Credit Services) "shall be paid in full pursuant to the terms . . . of the installment payment agreement without modification." (*See* Plan, ¶ 3.5). A claim that is paid in full according to its contract terms is an unimpaired claim. *See* 11 U.S.C. § 1124(1).

4

1129(a)(10) based on the ballot of Citicorp Credit Services, Inc. (Sears), since it has not accepted treatment as a Class 6 creditor. The Plan cannot be confirmed because it includes an impaired class of claims and no impaired class of claims has voted to accept the Plan.

Based on the evidence presented at the final hearing on confirmation, the Debtor's proposed treatment of Beal's secured claim fails to pay Beal the value of its secured claim as required by either 11 U.S.C. § 1129(a)(7)(A) or 11 U.S.C. § 1129(b)(2).[5] The Plan proposes to

---

[5]Section 1129(a)(7)(A) requires that each claimant within an impaired class must either accept the plan, or

> receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter7 of this title on such date. 11 U.S.C. § 1129(a)(7)(A)(ii).

Because Beal, an impaired creditor*, did not accept the Plan, Debtors would have to show that Beal will receive at least as much under the Plan as it would if the assets of the Debtors were liquidated in a Chapter 7 proceeding as of the effective date of the Plan.

Alternatively, because Beal is a separately classified impaired creditor that voted to reject the Debtors' Plan, confirmation would be governed by 11 U.S.C. § 1129(b). Pursuant to 11 U.S.C. § 1129(b), a plan can be confirmed over the rejection by an impaired class of creditors, only if the plan "is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). "Fair and equitable" is defined as follows:
> With respect to a class of secured claims, the plan provides --
>> (I)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

11 U.S.C. § 1129(b)(2)(A)(i).

5

pay Beal $70,000.00 plus interest at 5%. Beal asserts that the value of its secured claim is $110,000.00, including the real property, the building situated thereon, and the equipment.

At the final hearing on confirmation, Mr. John Howden, a real estate appraiser who appraised the real property securing the SBA loan at the time the SBA loan was granted, testified that the current value of the real property is no more than $20,000.00 per acre, and that he would not expect that the current value of the mill building located on the property would be worth more than the $55,000.00 he initially appraised it for in 1989. Gavin Morgan, a real estate appraiser hired by Beal, testified that the current value for all the real property and the building is approximately $91,000.00. *See also,* Exhibit J, Summary Appraisal of the Valencia Flour Mill Facility.

Neither appraiser appraised the value of the equipment used by the Debtors in their milling operation. The Debtors valued the milling equipment in their Schedule B at $20,000.00; however, Jose Cordova testified at the confirmation hearing that the equipment has no resale value because he refurbished and changed the equipment so that it can create the specialized

---

Thus, under this section, the Plan must provide that Beal will receive payments at least equal to the value of its collateral. *See In re Dean,* 166 B.R. 949, 956 (Bankr.D.N.M. 1994) (explaining that 11 U.S.C. § 1129(b)(2)(A)(i) requires that a plan 1) allow the secured creditor to retain its lien on the collateral; 2) provide for cash payments totaling at least the allowed amount of the secured claim; and 3) provide the secured creditor with payments of a present value at least equal to the value of its secured claim as of the effective date of the plan).

*The Tally of Ballots recites that Class 2 consisting only of Beal is unimpaired. However, the Plan proposes to pay the allowed secured claim of Beal at an interest rate other than at the contractual rate. Beal, is, therefore, impaired. *See* 11 U.S.C. § 1124 ("a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan – (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest . . . .").

6

flour Valencia Flour Mill, Ltd. sells. Based on the evidence before the Court, the Court finds that the total value of the collateral securing Beal's loan, including the equipment, is $92,000.000. The Plan, which proposes to pay Beal $70,000.00 on its claim, plus interest, fails to satisfy the requirements of 11 U.S.C. § 1129(a)(7)(A)(ii) and/or 11 U.S.C. § 1129(b)(2)(A)(i)(II).

With regard to the interest rate to be applied to the claim of Beal, the Court finds that Debtors presented insufficient evidence that the current market rate is commensurate with the 5% proposed in their Plan. Section 11 U.S.C. § 1129(b)(2)(A)(ii) entitles a secured creditor to receive payments equal to the present value of its claim, determined based on the market rate of interest. *See In re Stratford Associates Ltd. P'ship,* 145 B.R. 689, 701 (Bankr.D.Kan. 1992) (stating that "[p]ayment of present value entitles creditors to payment of interest or a discount factor on their claims" and citing *Hardzog v. Federal Land Bank of Wichita (In re Hardzog),* 901 F.2d 858 (10th Cir. 1990) for the proposition that the appropriate rate of interest is the "market" rate). Debtors' Exhibit 6, admitted into evidence at the final hearing on confirmation, is a newspaper clipping from the Wall Street Journal reflecting that the prime rate is 8.25% and the discount rate is 6.25%. Beal asserts that the contract rate should be adhered to, and suggests that the appropriate interest rate is 6.5%. Based on the evidence before the Court, the Court finds that an interest rate of 6.5% will satisfy the requirements of 11 U.S.C. § 1129(b)(2)(A)(ii).

Finally, Beal objects to the provisions in the Plan which relieve Jose Cordova and Kathryn Cordova of their personal liability for the debt of Valencia Flour Mill, Ltd. Paragraph 8.2 of the Plan provides:

> Notwithstanding any other provision in this Plan, including any contrary provisions, if any, upon entry of an Order Confirming this Plan, Debtors' Jose and

7

> Kathryn Cordova, shall be discharged of any [sic] all obligations whatsoever to Beal Bank, including, but not limited to, any claim on the Note, Mortgage, and Guaranty dated June 8, 1990) [sic] to First National Bank of Belen, which were guaranteed by the SBA and subsequently assigned to Beal Bank. This provision does not affect Beal Bank's lien on the Cordova's [sic] 2000 Honda Accord.

Generally, the discharge of a Chapter 11 debtor does not discharge the liability of co-debtors or guarantors on the debt. *See* 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."); *Monarch Life Ins. Co. v. Ropes & Gray,* 65 F.3d 973, 979 (1st Cir. 1995) ("Since the chapter 11 debtor is the only entity permanently discharged upon confirmation of a chapter 11 plan . . . , its creditors usually are free to pursue all available remedies against those undischarged entities which were obligated, along with the chapter 11 debtor, on a prepetition debt.").

Here, Valencia Flour Mill, Ltd. is the principal debtor and principal obligor on the debt; however, Jose Cordova and Kathryn Cordova, the guarantors of the debt, are also debtors in this Chapter 11 proceeding. Pursuant to 11 U.S.C. § 1141(d)(1), "confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). Nevertheless, the discharge afforded by 11 U.S.C. § 1141(d)(1) does not serve to discharge Jose Cordova and Kathryn Cordova from their obligations to fund the Plan. The Plan provision, therefore, is an impermissible attempt by the Debtors to relieve Jose Cordova and Kathryn Cordova from any obligation to Beal to fulfill the obligations of the Debtors to Beal under the Plan. *Cf. In re R.J. Reynolds-Patrick County Memorial Hosp., Inc.,* 305 B.R. 243, 245 and 246 (Bankr.W.D.Va. 2003) (noting that the discharge in § 1141(d)(1) "does not cause the underlying debt to vanish" and explaining that "[i]n chapter 11, the creditor is enjoined from collecting the debt as it arose pre-petition, but the debtor still has an obligation to pay the

8

creditor in accordance with the treatment of the creditor's claim as provided in the plan.")(citations omitted).

Based on the foregoing, the Court concludes that the Plan cannot be confirmed as proposed.

WHEREFORE, IT IS HEREBY ORDERED, that confirmation of the Plan is DENIED, with leave to amend in accordance with the terms of this Order.

MARK B. McFEELEY
United States Bankruptcy Judge

Copy to:

Louis Puccini, Jr.
Attorney for Debtors
PO Box 30707
Albuquerque, NM 87190-0707

Jason C. Bousliman
Attorney for Beal Service Corporation
PO Box 2168
Albuquerque, NM 87103-2168

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103

9