UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: VALENCIA FLOUR MILL, LTD.,            No. 11-05-20103 MA

and

JOSE CORDOVA and
KATHRYN CORDOVA

consolidated into

VALENCIA FLOUR MILL, LTD.

Debtors.

## ORDER WITHDRAWING CONDITIONAL APPROVAL OF DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT AND DENYING CONFIRMATION OF DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION

THIS MATTER is before the Court on confirmation of Debtors' First Amended Plan of Reorganization ("Amended Plan"). Debtors filed their Amended Plan following the entry of the Court's Order on Confirmation of Valencia Flour Mill, Ltd.'s Plan of Reorganization ("Order") which denied confirmation based, in part, on the lack of an impaired, accepting class of creditors as required for confirmation under 11 U.S.C. § 1129(a)(10). Creditor Beal Service Corporation a/k/a LPP Mortgage Limited ("Beal") objected to the Amended Plan, asserting that the Amended Plan is not fair and equitable as required under 11 U.S.C. § 1129(b)(1) and violates the absolute priority rule under 11 U.S.C. § 1129(b)(2)(B)(ii). The Court held a final hearing on the Amended Plan on January 11, 2007 and took the matter under advisement. At the final hearing on confirmation, information regarding certain pre-petition transfers was brought out in testimony. Such information was not fully disclosed in the Debtors' original Disclosure Statement nor in their First Amended Disclosure Statement. The Court, therefore, finds that the

1

conditional approval of the First Amended Disclosure Statement must be withdrawn. The Court also finds that the Amended Plan does not meet all requirements for cram down under 11 U.S.C. § 1129(b). Consequently, the Court will deny approval of the First Amended Disclosures Statement and deny confirmation of the Debtors' Amended Plan.

PROCEDURAL HISTORY

Debtors Jose D. Cordova and Kathryn A. Cordova filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 14, 2005. Debtor Valencia Flour Mill, Ltd., the Cordovas' business, filed a voluntary petition under Chapter 11 of the Bankruptcy Code on November 11, 2005. The cases were consolidated on January 5, 2006. (Docket # 37). Beal is the Debtors' largest creditor. In August of 2006, the Court denied confirmation of Debtors' initial plan of reorganization. (*See* Docket # 89). Debtors filed a First Amended Disclosure Statement and an Amended Plan on November 30, 2006. (*See* Docket # 101 and #102). On December 6, 2006, the Court entered an order which conditionally approved the Debtors' First Amended Disclosure Statement, fixed a deadline for filing objections to the First Amended Disclosure Statement and the Amended Plan and set a final hearing on the First Amended Disclosure Statement and the Amended Plan. (*See* Docket # 104). Beal filed objections to the First Amended Disclosure Statement and to the Amended Plan. (*See* Docket # 108 and Docket #109).

DISCUSSION

First Amended Disclosure Statement

Debtors' First Amended Disclosure Statement proposes that Debtors will contribute $50,000.00 to be paid to Beal on approval of Debtors' Amended Plan. *See* Debtors' First

Amended Disclosure Statement, ¶ 2.6. Elsewhere in the First Amended Disclosure Statement, Debtors report that the Class 4 claim of Beal will be paid $50,000.00 in cash on or before the effective date of the plan, and that the Cordovas will contribute not less than $10,000.00 to assist in plan payments in order to meet the requirements for cramdown. *See* Debtors' First Amended Disclosure Statement, ¶ and ¶ 3.6. In ¶ 11.1 of the First Amended Disclosure Statement, the Debtors state that the Cordovas will retain their interest in Valencia Flour Mill, Ltd. "upon payment of 'new value' consisting of $50,000.00 from the Cordovas' personal retirement account (which is exempt)." Other than these statements, nothing in the First Amended Disclosure Statement explains the source of these funds.

The Cordovas' individual tax return for 2005, attached to the First Amended Disclosure Statement as Exhibit B, reflects a capital gain of $50,000.00 from a sale of 7.46 acres of vacant land on October 8, 2005 for $85,000.00. The Statement of Financial Affairs filed in the Cordovas' bankruptcy proceeding reflects sales of two parcels of real property on October 7, 2005 for a total of $85,000.00. Nothing in the Debtors' First Amended Disclosure Statement explains these transfers made just prior to the filing of the Debtors' bankruptcy proceeding, reports the disposition of the proceeds from the sales, or discloses whether such transfers may be subject to an avoidance action.[1]

Pursuant to 11 U.S.C. § 1125, a debtor is required to provide "adequate information" in

---

[1] Beal filed a Complaint to Avoid Fraudulent Transfer and Recover Money or Property ("Complaint") on January 10, 2007, one day prior to the final hearing on confirmation of Debtors' Amended Plan. The Complaint seeks to set aside the Debtors' pre-petition sales of real property as fraudulent transfers and recover the property or the proceeds therefrom for the benefit of the bankruptcy estate. *See* Adversary Proceeding No. 07-1003 M.

3

the form of a disclosure statement before solicitation for voting on a plan of reorganization may occur. 11 U.S.C. § 1125(a)(1) and (b). When the debtor has elected to be treated as a small business, the Court "may conditionally approve a disclosure statement subject to final approval after notice and a hearing." 11 U.S.C. § 1125(f)(1). In this instance, the Court finds, in light of the additional information regarding the pre-petition transfers raised at the final hearing on confirmation of Debtors' Amended Plan, that the First Amended Disclosure Statement fails to disclose "adequate information" as required under 11 U.S.C. § 1125(a)(1).

Amended Plan

The Amended Plan contains nine classes of claims, including the following:

| | |
|---|---|
| Class 3 | Allowed Secured (Non-Priority) Claims of the Property Tax Division of the State of New Mexico Taxation and Revenue Department ("PTD") (Including Valencia County Treasurer) |
| Class 4 | Allowed Secured Claim of Beal[2] |
| Class 7 | Allowed unsecured claims not in Class 8, including the unsecured claim of Beal |
| Class 8 | Allowed Unsecured Claims of less than $5,000.00, including the claim of the Veterans' Administration Medical Center claim and the Allowed Unsecured Claim of Citibank (f/k/a) Sears. |
| Class 9 | Equity interests, including the ownership interests of the Cordovas in Valencia Flour Mill, Ltd. |

---

[2]After the conclusion of the final hearing on confirmation of Debtors' Amended Plan, Debtors filed a Motion to Re-Evaluate Beal Bank's Allowed Secured and Unsecured Claim and Value of Collateral ("Motion to Re-Evaluate Beal's Claim"). *See* Docket # 118. Because the Motion to Re-Evaluate Beal's Claim was not filed until after the close of evidence on confirmation of Debtors' Amended Plan, the Court will not consider it in making its determination regarding confirmation.

4

The tally of ballots reflects that Class 3, Class 8[3] and Class 9[4] voted to accept the Amended Plan, and Class 7 voted to reject the Amended Plan. The ballot cast by Beal rejecting the Amended Plan reports a secured claim in the amount of $92,000.00 and an unsecured claim in the amount of $135,000.00, not including attorneys' fees or applicable interest from June 30, 2006. (*See* Exhibit C to Tally of Ballots, Docket # 111). Beal's claim will not be paid in full under the Amended Plan; consequently, Class 4 and Class 7 in which Beal's claim is classified are impaired classes of claims. *See* 11 U.S.C. § 1124.

In order to confirm a plan which contains impaired classes of claims, at least one impaired class of claims must accept the plan. 11 U.S.C. § 1129(a)(10). Beal asserts that notwithstanding the Debtors' characterization of Class 3 and Class 8 as impaired classes of claims, those classes are not impaired; consequently the Debtors' fail to meet this confirmation requirement. Upon careful review of the classes of claims and the Debtors' proposed treatment of those claims, the Court finds that while Class 8 may or may not be impaired, Class 3 constitutes an impaired class of claims which voted to accept the Debtors' Amended Plan.

The Amended Plan provides that all allowed claims in Class 8 will be paid in full in cash

---

[3]The Court notes that despite the change in the Amended Plan which classified the claim of the Veteran's Administration Medical Center in Class 8, the ballot for the Veteran's Administration Medical Center continues to reflect in the body of the document that the claimant is the holder of a Class 7 claim. (*See* Exhibit G to Tally of Ballots, Docket #111).

[4]Class 9 consists of the individual Debtors as equity holders of Valencia Flour Mill, Ltd.; consequently, the Class 9 acceptance of the Amended Plan is not counted for purposes of determining confirmation. *See* 11 U.S.C. § 1129(a)(10) ("If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance fo the plan by an insider"). In addition, the language contained in the ballots for the Class 9 claimants, reflects that the claimant is the holder of a Class 7 claim. (*See* Exhibits H & I to Tally of Ballots, Docket #111)

5

on effective date, or paid in full in accordance with the terms of pre-petition installment note, commencing on the effective date.[5] Under 11 U.S.C. § 1124(1), a class of claims is unimpaired when the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). Because Class 8 claimants will either be paid in full in cash, or according to their pre-petition contract terms, it appears that Class 8 is unimpaired. However, because interest at the contract rate will not begin to accrue until the effective date of the plan, such claimants will not receive payment of the full amount of their claims under their original contract. Class 8 is, therefore, impaired.

The Amended Plan proposes to treat the Class 3 claim of the PTD as follows: PTD will retain the lien securing its claim to the extent of its allowed secured claim, and the Debtors will make deferred cash payments of $300.00 or more per month until the amount of the claim as of the effective date of the plan is paid in full, plus statutory interest. The claim of PTD,

---

[5]After the final hearing on the Debtors' Amended Plan, Debtors filed a Modification of Debtors' First Amended Plan of Reorganization ("Modification"), which proposes to treat Class 8 claims as follows:
All allowed Unsecured Claims whose individual claim is Five Thousand Dollars ($5,000.00) or less shall be paid in Cash on or before the Effective Date the full amount of the allowed pre-petition claim in monthly installment payments of One Hundred Dollars ($100.00) per month or more, commencing on the Effective Date with payments to be made monthly thereafter. The Allowed Claim shall include all pre-petition principal and interest, and all interest at the respective contract rate. These payments will be made by the Cordovas from their personal income including post-petition income, Social Security and retirement income to the extent such obligation is a personal claim and not a business claim, and from Valencia Flour Mill if such claim was to have been paid by Valencia Flour Mill.

Because the Modification was not filed until after the final hearing on confirmation of Debtors' Amended Plan, the Court will not consider it. However, by providing for payment of "all interest at the respective contract rate" the Modification appears to render Class 8 unimpaired.

6

representing unpaid real property taxes which have been assigned to the PTD of the New Mexico Taxation and Revenue Department by the Valencia County Treasurer, is not a priority tax claim. Because the Amended Plan defers payment of PTD's claim, and provides further that neither the Valencia County Treasurer nor the PTD, nor the State of New Mexico, nor any other state agency may schedule nor list for sale, nor attempt to sell the real property for which these real property taxes remain due, the Amended Plan alters the rights such state agencies would have available to them under applicable state law. *Cf. In re Sunflower Racing, Inc.,* 219 B.R. 587, 597 (Bankr.D.Kan. 1998), *aff'd,* 226 B.R. 673 (D.Kan. 1998) (finding that deferred payment to secured tax claimant constituted an impaired class). *See* N.M.S.A. § 7-38-48 and § 7-38-65 (2006 Cum. Supp.) (providing for lien against real property for delinquent taxes and providing for sale of real property subject to tax lien to collect delinquent taxes). Class 3 is, therefore, impaired. Because Class 3 voted to accept the plan, the Debtors have satisfied 11 U.S.C. § 1129(a)(10).

Beal, an impaired claimant, is classified in Class 4 and Class 7. Because Beal voted to reject the Amended Plan, confirmation is governed by the cramdown[6] provisions contained in 11 U.S.C. § 1129(b). Pursuant to 11 U.S.C. § 1129(b), a debtor can confirm a plan over a rejecting class of claimants, provided at least one impaired class of claimants has voted to accept the plan, and provided "the plan does not discriminate unfairly, and is fair and equitable" with respect to each rejecting impaired class. 11 U.S.C. § 1129(b)(1). Whether a plan unfairly discriminates or

---

[6]"Cram down is a colloquial expression used in bankruptcy practice to signify confirmation of a reorganization plan notwithstanding the negative vote of a secured creditor class-the court figuratively crams the plan down the throat of the dissenting class." *In re Sunflower Racing, Inc.,* 219 B.R. 587, 590 (Bankr.D.Kan. 1998), *aff'd,* 226 B.R. 673 (D.Kan. 1998).

7

is not fair and equitable involves two separate inquiries. *See In re Lotspeich,* 328 B.R. 209, 220 n.15 (10th Cir. BAP 2005) (noting that "both prongs of § 1129(b) must be met before a plan may be crammed down: specifically, a plan may not unfairly discriminate and must be fair and equitable with regard to all non-accepting impaired classes.").

The Bankruptcy Code does not define unfair discrimination for purposes of considering whether a plan may be confirmed over a non-accepting impaired class of claimants. *In re Stratford Associates Ltd. P'ship,* 145 B.R. 689, 700 (Bankr.D.Kan. 1992). And while the bankruptcy code allows for separate classification of similar claims (i.e., discrimination), such discrimination may preclude confirmation under 11 U.S.C. § 1129(b) when the plan separately classifies similar claims without sufficient justification (i.e, it is unfair). *See In re Aztec Co.,* 107 B.R. 585, 588-590 (Bankr.M.D.Tenn. 1989). Factors that may be relevant to assess the fairness of the discrimination under § 1322(b)(1) include:

> (1) whether the discrimination is supported by a reasonable basis;
> (2) whether the debtor can confirm and consummate a plan without the discrimination;
> (3) whether the discrimination is proposed in good faith; and
> (4) the treatment of the classes discriminated against.
>
> *Id.* at 590 (citations omitted).

Some courts have rejected this four-part test in favor of an approach that creates a rebuttable presumption of unfair discrimination where "there is: (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution." *In re Dow Corning Corp.,* 244 B.R. 696, 702 (Bankr.E.D.Mich. 1999) (citing

8

Professor Bruce A. Markell, A New Perspective on Unfair Discrimination in Chapter 11, 72 Am. Bankr.L.J. 227, 228 (1998). *See also, In re Armstrong World Industries, Inc.,* 348 B.R. 111, 122 (D.Del. 2006)(adopting the Markell rebuttable presumption test); *In the Matter of Greate Bay Hotel & Casino, Inc.,* 251 B.R. 213, 231 (Bankr.D.N.J.) (adopting rebuttable presumption approach). A plan proponent can rebut the presumption of unfair discrimination "by showing that, outside of bankruptcy, the dissenting class would similarly receive less than the class receiving a greater recovery, or that the alleged preferred class had infused new value into the reorganization which offset its gain." *Dow Corning,* 244 B.R. at 702.

Under either test, the Court finds that the Debtors' Amended Plan unfairly discriminates against Beal. The Debtors' Amended Plan separately classifies the unsecured portion of Beal's claim from other general unsecured creditors. Class 7 is subtitled "Allowed Unsecured Claims, Excluding Class 8 Claimants." Debtors propose to pay unsecured creditors in Class 7 five percent (5%) of their allowed claim over five years with no interest. Beal is the only creditor in Class 7. In contrast, as discussed above, Class 8 unsecured creditors whose claims are less than $5,000.00 will be paid in full in cash as of the effective date, or will be paid in full in accordance with the terms of their pre-petition agreement commencing on the effective date. Allowed unsecured claims in Class 8 will include all pre-petition principal and interest, and post-petition interest at the contract rate beginning from the date of confirmation of the Amended Plan.

Debtors characterize Class 8 as a class created for administrative convenience.[7] A plan

---

[7]The Court notes that the Debtors did not file a motion in accordance with Rule 3013, Fed.R.Bankr.P. requesting the Court to make a determination as to the Class 7 classification of small unsecured claims pursuant to 11 U.S.C. § 1122(b).

9

may include a separate class of unsecured claims in accordance with 11 U.S.C. § 1122(b), which provides:

> A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122(b).

The fact that the creditors in Class 8 have smaller claims is not reasonable and necessary for the separate classification. There are only three claimants in Class 8. While confirmation is not dependent upon the separate classification of the small unsecured claims since Class 3 constitutes an impaired accepting class of claims, it is clear that the purpose for separately classifying the unsecured portion of Beal's claim was to avoid paying the Beal a significant dividend on the unsecured portion of its claim while paying other unsecured creditors in full with interest. Such treatment constitutes unfair discrimination since it primarily preserves the Debtors' assets at the expense of Beal. *Cf. Aztec Co.,* 107 B.R. at 591.

Under the rebuttable presumption approach, the presumption of unfair discrimination arises because one class of unsecured creditors will essentially be paid in full, while another will receive only a 5% dividend on its claim to be paid over time with no interest. The Debtors have not rebutted the presumption, because, outside of bankruptcy, there is no indication that Beal would receive less than the Class 8 claimants could expect to receive outside of bankruptcy, nor is Class 8 infusing new value to offset the payment of their claims.

Because the Court finds that the Amended Plan unfairly discriminates, the Court need not address the "fair and equitable" requirement for confirmation under 11 U.S.C. § 1129(b)(1). Nevertheless, because Beal asserts that the plan violates the absolute priority rule, the Court will

briefly consider that issue. Under 11 U.S.C. § 1129(b)(B)(ii), the holders of each claim or interest junior to the claims of other unsecured claimants may not receive or retain an interest in any property on account of their junior interest. 11 U.S.C. § 1129(b)(2)(B)(ii). This requirement is commonly called the absolute priority rule. "The absolute priority rule in its simplest terms requires that creditors of a debtor in bankruptcy reorganization receive payment of their claims in their established priority, and that they receive payment in full before lesser interests-such as those of equity holders-may share in the assets of the reorganized entity." *In re Ashton,* 107 B.R. 670, 673-74 (Bankr.D.N.D. 1989) (citation omitted). *See also, In re Geneva Steel,* 281 F.3d 1173, 1180 n.4 (10th Cir. 2002) ("The absolute priority rule requires that certain classes of claimants be paid in full before any member of a subordinate class is paid.")(citation omitted). Debtors allege that because the only value of Valencia Flour Mill, Ltd. is good will, their equity interest in the business has zero value. This argument completely fails to avoid implicating the absolute priority requirements under 11 U.S.C. § 1129(b)(2)(B)(ii).

Any interest a debtor retains on account of his prior ownership interest constitutes an interest in property as described in 11 U.S.C. § 1129(b)(2)(B)(ii). *Unruh v. Rushville State Bank,* 987 F.2d 1506, 1507 (10th Cir. 1993) (finding that by retaining interest and control of their businesses and the assets of their businesses, debtors were retaining an interest on account of their equity interest). "'Whether the value is 'present or prospective, for dividends or only for purposes of control' a retained equity interest is a property interest to 'which the creditors [are] entitled ... before the stockholders [can] retain it for any purpose whatever.'"*Id.* at 1509 (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 208, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), citation omitted). This is true regardless of the value of the retained assets. *Ashton,* 107 B.R. at

11

674 ("'[E]ven where debts far exceed the current value of assets, a debtor who retains his equity interest in the enterprise retains property.'") quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988).

Here, Debtors are retaining their interest in their reorganized business on account of their prior ownership interest; consequently, they must satisfy the absolute priority rule. And because the Amended Plan does not provide for payment in full of Beal's unsecured claim, the plan appears to violate the absolute priority rule. Whether the Debtors may satisfy the "new value"[8] exception to the absolute priority rule by contributing their retirement funds to help fund the plan is a separate question that the Court will not now address in light of the finding that the Amended Plan is otherwise unconfirmable because it unfairly discriminates.

WHEREFORE, IT IS HEREBY ORDERED that the Order conditional approval of the Debtor's First Amended Disclosure Statement is revoked.

ORDERED FURTHER that confirmation of Debtors' Amended Plan is DENIED.

_____
MARK B. McFEELEY
United States Bankruptcy Court

---

[8]Under the "new value exception" to the absolute priority rule, "equity holders may retain interests without paying senior creditors in full if they contribute additional capital which is essential, substantial, and at least equal to the fair value of the equity retained." *Aztec Co.,* 107 B.R. at 588 citing *In re U.S. Truck Co., Inc.,* 800 F.2d 581, 588 (6th Cir. 1986). *See also, In re Brotby,* 303 B.R. 177, 196 (9th Cir. BAP 2003)(questioning whether new value exception to absolute priority rule applies to individual debtors, but finding that bankruptcy court failed to consider whether debtors' proposed contribution of exempt pension funds was substantial or necessary to the success of the plan).

12

COPY TO

Louis Puccini, Jr.
Attorney for Debtors
PO Box 30707
Albuquerque, NM 87190-0707

Jason Bousliman
Attorney for Beal Bank
PO Box 2168
Albuquerque, NM 87103

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103

13